IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

KAPIL PAREEK, JYOTI          :
MANEKAR, and ANISHA          :
PATEL,                       :
                             :
    Plaintiffs,              :
                             :
v.                           :    Civil Action No.
                             :    2:25-cv-00027-RWS-AWH
NORTHEAST GEORGIA            :
PHYSICIANS GROUP, INC.,      :
NORTHEAST GEORGIA HEALTH     :
SYSTEM, INC., and GEORGIA    :
UROLOGY, LLC,                :
                             :
    Defendants.              :

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on the Motions to Amend filed by Plaintiffs,

see Docs. 26, 33, and the Motions to Dismiss filed by Defendants Northeast

Georgia Physicians Group, Inc. ("NGPG"), Northeast Georgia Health System, Inc.

("NGHS"), and Georgia Urology LLC ("Georgia Urology"). See Docs. 23, 24. For

the reasons discussed below, Plaintiff's First Motion to Amend is **DENIED AS**

**MOOT**, and Plaintiffs' Second Motion to Amend [33] is **DENIED**. It is

**RECOMMENDED** that Defendants' Motions to Dismiss be **GRANTED IN**

**PART** and **DENIED IN PART**.

1

## **Procedural History**[1]

On January 28, 2025, Plaintiffs filed a complaint against Defendants, alleging claims of discrimination and retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. See generally Doc. 1. Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim. See Docs. 13, 15. In response, Plaintiffs filed on April 25 their First Amended Complaint, mooting Defendants' motions to dismiss. See Docs. 21, 22. On May 9, Defendants filed renewed motions to dismiss Plaintiffs' First Amended Complaint for failure to state a claim. See Docs. 23, 24. Plaintiffs then moved to amend their Complaint for a second time on June 4. See Doc. 26. Defendants responded in opposition to that second motion to amend. See Docs. 29, 30. Finally, on December 4, Plaintiffs filed a Third Motion to Amend, to which Defendants again responded in opposition. See Doc. 33. Following an extension of time to reply, Plaintiffs filed their replies to Defendants separately. See Docs. 37, 38.

With briefing complete, the undersigned turns to the merits of the pending motions.

---

[1] References to docket materials will be made to the Court's CM-ECF pagination.

## Discussion

### I.    Motions to Amend [26, 33]

Federal Rule of Civil Procedure 15(a) provides that when a party seeks leave of court to amend a pleading, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]here must be a substantial reason to deny a motion to amend, such as undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Nance v. Ricoh Elecs., Inc., 381 F. App'x 919, 924 (11th Cir. 2010) (internal quotations omitted).

#### a.    Threshold Procedural Issues

Plaintiffs filed their First Amended Complaint with Defendants' consent on April 25, 2025. See Doc. 21. Defendants then filed motions to dismiss that Amended Complaint. See Docs. 23, 24. On June 4, 2025, Plaintiffs filed their Second Proposed Amended Complaint, alongside a motion for leave to amend their complaint. See Doc. 26. Defendants filed briefs opposing that motion for leave. See Docs. 29, 30. Plaintiffs then filed the instant Motion for Leave to Amend [33] on December 4, 2025. See Doc. 33. Because Plaintiffs' Third Proposed Amended Complaint contains essentially all of the Second Proposed Amended Complaint and more, the Third Amended Complaint "essentially superseded" the Second Proposed Amended Complaint. See generally Docs. 26-1,

33-1; see also Harrington v. Veritext, LLC, No. 24-CV-22787-MOORE/Elfenbein, 2024 WL 4678929, at *4 (S.D. Fla. Nov. 4, 2024) (holding that a subsequent motion to amend, while another motion to amend was pending, mooted the first motion). Because Plaintiffs' Third Motion to Amend essentially superseded their Second Motion to Amend, Plaintiffs' Second Motion to Amend is **DENIED AS MOOT**.[2]

### b. **Futility and Undue Delay**

Defendants argue that Plaintiffs' Third Proposed Amended Complaint is futile. See Doc. 34 at 4–10, Doc. 35 at 1–2. NGPG and NGHS also note that Courts may deny a motion for leave to amend on undue delay grounds. See Doc. 34 at 3. Plaintiffs replied separately to each response. See Docs. 37, 38.

Courts may properly deny leave to amend a complaint under Rule 15(a) when amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.' " Coventry First, LLC v. McCarty, 605 F.3d

---

[2] The Court notes, however, that it will consider the parties' briefings on the Second Motion to Amend to the extent such briefings are relevant to Plaintiffs' Third Motion to Amend. This is because much of the substance regarding the briefing on the two motions are the same—at least with respect to Georgia Urology. For example, Georgia Urology essentially imported in its response to Plaintiffs' Third Motion to Amend its response to Plaintiffs' Second Motion to Amend because both amended complaints were the same with respect to Georgia Urology. See generally Doc. 35.

865, 870 (11th Cir. 2010) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th

Cir. 2007)). A motion for leave to amend may also be denied in the case of undue

delay. See Foman, 371 U.S. at 182 (noting that undue delay is a reason to deny a

motion for leave to amend).

### i. Claims in the Third Proposed Amended Complaint against Defendants NGPG and NGHS

In their Third Proposed Amended Complaint, Plaintiff Pareek seeks to add

claims against NGPG under the ADA and FMLA. See Doc. 33-1 ¶¶ 593–610.[3]

Defendants NGPG and NGHS, collectively in their responses to Plaintiffs' second

and third motions to amend, argue that all of Plaintiff Pareek's Amendments are

futile. See generally Docs. 30, 34; see also Doc. 23. These Defendants also note

that the ADA and FMLA claims "have been known to Pareek since the date this

lawsuit was filed." Id. at 2. Defendant replies that his FMLA claim is timely, and

that he did not fail to exhaust his ADA claims. See Doc. 37 at 2, 4.

### A. The FMLA Claim

The Court first finds that Plaintiff Pareek's FMLA amendment should be

denied for undue delay. See Edward Lewis Tobinick, MD v. Novella, 848 F.3d

---

[3] While it is not entirely clear, it appears Plaintiffs have left in their Third Proposed Amended Complaint a "strike-through" edit where a claim for retaliation previously appeared. See Doc. 33-1 ¶ 583. Plaintiffs did the same in their Second Proposed Amended Complaint. See Doc. 26-1 ¶ 580. The Court thus treats Plaintiffs as having abandoned their § 1981 retaliation claim against NGPG and NGHS in the Second and Third Proposed Amended Complaints.

935, 947 (11th Cir. 2017) ("The Supreme Court has explained that a district court may properly deny leave to amend for reasons 'such as undue delay.' " (quoting Foman, 371 U.S. at 182)). From reading the Third Proposed Amended Complaint [33-1] alongside the Plaintiffs' Motion for Leave to Amend [33], it is apparent that Pareek's new FMLA claim was "known to Pareek since the date this lawsuit was filed." Doc. 34 at 2; see also Pls. MTA, Doc. 33 at 3 ("The facts alleged against NGPG in the amended complaint arise out of Dr. Pareek's employment relationship with NGPG and out of the same facts and circumstances that support the claims under the Civil Rights Act of 1866.").

In other words, Plaintiff Pareek has known about the facts giving rise to Pareek's potential FMLA claim for nearly a year, if not longer. Plaintiffs filed their initial complaint on January 28, 2025. See Doc. 1. They have since, before filing this motion to amend: (1) filed an amended complaint with the consent of Defendants, see Doc. 21; and (2) filed a second proposed amended complaint, see Doc. 26. Neither the First Amended Complaint nor the Second Proposed Amended Complaint contain any claims under the FMLA. See generally Docs. 21, 26-1. Moreover, Pareek's new FMLA claim is largely premised on the FTE classification issue—facts known to Plaintiff Pareek at the time he filed his original complaint. Compare Doc. 33-1 ¶¶ 607–10 with Doc. 1 ¶¶ 174–75, 259, 267.

Plaintiffs contend that Pareek "could have included" the FMLA claim in his original complaint but that he did not because he thought his FMLA claim "was interwoven with" his claims under the ADAA, and that the ADA claim was still pending before the EEOC. Doc. 37 at 2–3. The Court finds this explanation unpersuasive. Ultimately, it appears Plaintiff Pareek admits that the FMLA claim arose out of the same conduct giving rise to the original complaint. See Doc. 37 at 3. And as noted above, the Court agrees that Plaintiffs have known about the factual allegations giving rise to the FMLA claim from the time they filed the original complaint in January 2025. The fact that Pareek thought his FMLA claim "was interwoven with his" ADA claims is error. [4] See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003) (noting in affirming a denial of a motion to amend that there was "no good reason" why the plaintiff "could not have made the motion [to amend] earlier.").

Plaintiff Pareek has had ample opportunities to assert the FMLA claim he now alleges in the Third Proposed Amended Complaint. See Novella, 848 F.3d at 948 (affirming denial of motion for leave to amend where facts relevant to new

---

[4] Plaintiffs cite no authority for the proposition that FMLA and ADA claims can be intertwined such that bringing an ADA claim would by its very nature create liability under the FMLA or otherwise prevent Plaintiff from bringing an FMLA claim in federal court while an EEOC, ADA investigation was pending. See generally Doc. 37.

claims were available to the plaintiffs "nearly a year before" they sought to amend their complaint to include those facts); see also In re Engle Cases, 767 F.3d 1082, 1123 (11th Cir. 2014) ("Rule 15's liberal amendment standard is not an unqualified license to fix every new defect as the court uncovers them."). At some point, the motions to amend based on information known since the Complaint was filed must stop. The Court finds that Plaintiff Pareek has engaged in undue delay in asserting his new FMLA claim and thus that amendment will not be permitted. See Eiber Radiology Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so.").[5]

---

[5] NGPG and NGHS also argue that Pareek's new FMLA claim is futile. See Doc. 34 at 4–10. These Defendants argue that the FMLA claim is time-barred and that it fails to state a claim. Id. at 4–5. This first argument is unavailing for two reasons. First, Defendants provide no argument as to why conduct that occurred in May of 2023 could not relate back to the date of the original complaint's filing for purposes of the statute of limitations. See Fed. R. Civ. P. (c)(1)(B) (allowing relation back where the amendment asserts a claim that arose out of the same conduct set out in the original pleading). Here, the Court has already noted that the alleged conduct underlying the FMLA claim is the same as that set out in the original complaint. Second, the statute of limitations for *willful* violations of the FMLA is three years, not two. See 29 U.S.C. 2617(c)(2). And Plaintiffs allege willfulness on the part of NGPG and NGHS. See Doc. 33-1 ¶ 585.

Defendants also argue that Plaintiff Pareek fails to state a plausible FMLA interference claim. See Doc. 34 at 4–5. The Court agrees. An interference claim

B. **The ADA Claim**

As to Plaintiffs' new ADA claim, the Court agrees that Pareek fails to state a

claim.[6] NGPG and NGHS essentially argue that Pareek "has not and cannot allege

---

has two elements: (1) the employee was entitled to a benefit under the FMLA; and (2) the employer denied the employee that benefit. <u>White v. Beltram Edge Tool Supply, Inc.</u>, 789 F.3d 1188, 1191 (11th Cir. 2015). As NGPG and NGHS rightly point out, Pareek fails altogether to allege that he was denied any benefit. Plaintiffs argue that "Defendants refused to pay Dr. Pareek the same as another physician working at less than 1.0 Full Time Equivalent (FTE)—four days a week equivalent to .8 FTE—and receive full-time salary." Doc. 37 at 2 (citing Doc. 33-1 ¶ 278). But paragraph 278 simply alleges that Dr. Patel was allowed to work four days per week while remaining at 1.0 FTE and receiving a full-time salary. <u>See</u> Doc. 33-1 ¶ 278. In contrast, Paragraph 279 alleges that Pareek *believed* he was only permitted to work fewer on-site days if he reduced his status from 1.0 FTE to 0.8 FTE, which resulted in a commensurate pay reduction, and so he requested that accommodation, not that he was told as much by Defendants. <u>See id.</u> ¶ 279.

Ultimately, the Complaint alleges that Pareek sought to work fewer on-site days per week as an accommodation, and he took a corresponding reduction in pay consistent with that on-site time reduction. <u>See id.</u> ¶¶ 279, 287. Since the FMLA simply allows for *unpaid* leave, it is unclear from the Third Proposed Amended Complaint or Plaintiffs' briefing what FMLA benefit NGPG denied Pareek. <u>See, e.g.</u>, <u>Barreto v. WGCC, Inc.</u>, No. 06-21823-CIV-GOLD/TURNOFF, 2007 WL 9702904, at *3 (S.D. Fla. Jan. 8, 2007) ("The law is clear that the FMLA guarantees unpaid leave under certain conditions, but it does not require employers to pay for that leave time."). Plaintiffs do not allege that NGPG denied Pareek the ability to take leave—only that Pareek's salary was reduced when he moved from 1.0 to 0.8 FTE. <u>See</u> Doc. 33-1 ¶ 609. That conduct does not state an FMLA interference claim.

[6] The Court rejects Defendants' argument that Plaintiff Pareek failed to exhaust his administrative remedies. <u>See</u> Doc. 34 at 6–9; <u>see also</u> <u>See</u> <u>Gregory v. Ga. Dep't of Hum. Res.</u>, 355 F.3d 1277, 1280 (11th Cir. 2004) (noting that the proper inquiry is whether a complaint was like, related to, or might have grown out of the allegations contained in an EEOC charge). Put plainly, one could expect an ADA

that he sought an accommodation which was denied." Doc. 34 at 10. An element of a *prima facie* case for failure to accommodate is that the employer actually refused to reasonably accommodate the plaintiff's disability. See, e.g., Hall v. Wal-Mart Assocs., Inc., 373 F. Supp. 2d 1267, 1270–71 (M.D. Ala. 2005) (citing Pritchard v. S. Co. Servs., 92 F.3d 1130, 1132 (11th Cir. 1996)).

The Proposed Third Amended Complaint connects the failure to accommodate claim[7] to NGPG's failure to allow Pareek to work fewer days in the office while maintaining a 1.0 FTE. See Doc. 33-1 ¶ 599. But the Proposed Third Amended Complaint simply alleges that Pareek *asked* to go from 1.0 to 0.8 FTE, see id. ¶ 184, and that NGPG allowed this request. See id. ¶ 287. Plaintiffs never allege that Pareek requested to reduce his FTE status *while maintaining his full-time salary*. See generally id. In other words, Pareek wholly fails to allege that any request for accommodation was denied. In fact, the Proposed Third Amended Complaint alleges the opposite—that NGPG granted Pareek's accommodation request to reduce his FTE. See id. ¶ 287. Because Plaintiffs do not allege that NGPG actually denied any accommodation request, Pareek's ADA failure to

---

failure to accommodate claim to, at the very least, grow out of the allegations contained in Pareek's EEOC charge.

[7] While Plaintiffs do not make it explicitly clear, the Court understands the ADA claim asserted in the Third Proposed Amended Complaint to be one for failure to accommodate. See Doc. 33-1 ¶¶ 593–603.

accommodate claim constitutes a futile amendment. See, e.g., Bowers v. Am. Heart Ass'n, Inc., 513 F. Supp. 2d 1364, 1369 (N.D. Ga. 2007) (noting that a proposed amendment is futile when the allegations in the proffered complaint would be unable to withstand a motion to dismiss).

## ii.   The Claim in the Third Proposed Amended Complaint against Georgia Urology

As with their Second Proposed Amended Complaint, only Plaintiff Pareek asserts a claim for retaliation against Defendant Georgia Urology in the Third Proposed Amended Complaint. See Doc. 33-1 ¶¶ 591–92. Because Georgia Urology deems the claims in the Third Proposed Amended Complaint to be the same as those in the Second Proposed Amended Complaint, it rests on the arguments made in its motion to dismiss the first amended complaint [24] and its motion in opposition [29] to Plaintiffs' request for leave to file their second amended complaint. See Doc. 35 at 2.[8] Plaintiffs note in reply that they "do not seek to add any new claims against Georgia Urology in their proposed Third Amended Complaint." Doc. 38 at 1.

Georgia Urology's motion in opposition [29] to Plaintiffs' Motion to Amend [26] argues that the proposed amended complaint is futile because Pareek still fails

---

[8] While the Second Proposed Amended Complaint may be no different than the Third as to Georgia Urology, it is still different in some ways from the First Amended Complaint—thus requiring a futility analysis as to Georgia Urology.

to state a claim for retaliation under 42 U.S.C. § 1981. See Doc. 29 at 3–7. In particular, Georgia Urology contends that Pareek "again fails to allege that Georgia Urology was aware of any statutorily protected activity, or that it took any adverse employment action at all, much less in response to any such protected activity." Doc. 29 at 4. Plaintiff Pareek argues in response that Georgia Urology had knowledge of his protected activity and that exclusion from its hiring constitutes an adverse employment action. See Doc. 32 at 3–8.

"To state a claim of retaliation, a complaint must allege enough plausible facts to suggest that the plaintiff engaged in a statutorily protected activity, that she suffered a materially adverse action, and that a causal relationship existed between those two events." Goolsby v. City of Monroe, No. 24-13573, 2025 WL 3013403, at *2 (11th Cir. Oct. 28, 2025). In addition, in the context of retaliatory "failure-to-hire" cases, a plaintiff "must show that he applied for the available job and was qualified for the position." Harrison v. Macy's Inc., No. 1:17-cv-3257-TCB-AJB, 2022 WL 1298595, at *18 (N.D. Ga. Jan. 22, 2022), adopted by 2022 WL 1297992 (Mar. 21, 2022), aff'd, 2023 WL 6140827 (11th Cir. Sep. 20, 2023).

Pareek argues that he "has sufficiently alleged facts showing he sought employment [from Georgia Urology] and that Georgia Urology excluded him alone." Doc. 32 at 7. Moreover, he argues that even if he did not seek employment with Georgia Urology, its exclusion of him from its hiring "is a retaliatory act

itself." Id. Ultimately, Pareek rests on Burlington's guidance that an adverse action in the retaliation context is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

While Pareek is generally correct in citing the Supreme Court's guidance in Burlington, precedent in this Circuit still provides that a plaintiff must allege that he applied for a job in order to state a retaliatory failure to hire claim. See Harrison, 2022 WL 1298595, at *18; see also Ritchey v. S. Nuclear Operating Co., Inc., No. 2:07-CV-1844-RDP, 2010 WL 11520488, at *21 (N.D. Ala. Mar. 29, 2010) (noting that in a retaliatory failure to hire case, a plaintiff must show in conjunction with the second element of a typical claim that he actually applied for the position in question); Jones v. Ala. Power Co., No. 2:06cv780-ID, 2007 WL 3496720, at *9 (M.D. Ala. Nov. 14, 2007) (same).

Nowhere in the Third Proposed Amended Complaint does Pareek allege that he applied for employment with Georgia Urology. See generally Doc. 33-1. Pareek does allege that he "started the negotiation process [with Georgia Urology] first"[9] and alleges in a conclusory fashion that Georgia Urology "refused to engage Dr.

---

[9] While it is unclear exactly what Plaintiffs intend to refer to when they allege that Pareek "started the negotiation process first," it appears they mean to reference the August 2022 dinner that Pareek had with representatives of Georgia Urology, a little more than two years before NGPG closed and several employees transitioned to Georgia Urology. See Doc. 33-1 ¶¶ 104, 336.

Pareek . . . in any employment conversation during the practice transition." Id. ¶¶ 355, 359. But it is unclear what this means, as—even taking the facts in the light most favorable to Pareek—he alleges he told Patel that he did not want to join Georgia Urology a year after this singular dinner-conversation with Georgia Urology personnel took place and a year before NGPG closed, and he does not allege anywhere that he actually applied with Georgia Urology to put it on notice that he sought employment with it. See id. ¶ 269. In fact, he does not provide any factual details that explain what he means that Georgia Urology "refused to engage" with him—including who he attempted to engage with or how that person responded (or failed to respond). This failure to allege that Pareek at any time applied to work with Georgia Urology forecloses his retaliation claim against Georgia Urology. As a result, Plaintiffs' Third Proposed Amended Complaint is futile as to Pareek's retaliation claim against Georgia Urology.

Because Plaintiff Pareek engaged in undue delay in adding the FMLA claim against NGPG, the ADA claim is futile against NGPG, and his claim for retaliation against Georgia Urology is futile, Plaintiffs' Motion to Amend [33] is **DENIED**.

## II. <u>Motions to Dismiss [23, 24]</u>

### a. <u>Georgia Urology</u>

The Court deals first with Georgia Urology's Motion to Dismiss Plaintiffs' First Amended Complaint. See Docs. 24, 21. That Amended Complaint removed

the original retaliation claims asserted by Manekar and Patel—thus leaving only the retaliation claim made by Pareek. <u>See generally</u> Doc. 21. For the reasons discussed in the section above dealing with futility, Pareek's § 1981 retaliation claim fares no better here. Put plainly, Pareek never alleges that he actually applied for the job he wanted. <u>See generally</u> Doc. 21. This is fatal to his retaliatory failure to hire claim. <u>See</u> <u>Harrison</u>, 2022 WL 1298595, at *18 (noting that in the context of retaliatory "failure-to-hire" cases, a plaintiff "must show that he applied for the available job and was qualified for the position.").

As a result, it is **RECOMMENDED** that Georgia Urology's Motion to Dismiss [24] be **GRANTED**.

### b. **NGPG and NGHS**

With respect to Plaintiffs' § 1981 claims against NGPG and NGHS, NGPG and NGHS argue that Plaintiffs' First Amended Complaint constitutes a shotgun pleading. <u>See</u> Doc. 23 at 6–7. These Defendants also contend that all three Plaintiffs fail to state a § 1981 race discrimination or retaliation claim. <u>See</u> <u>id.</u> at 7–12. In response, Plaintiffs outline their efforts to amend the pleadings to "address the issues raised in the motions" to dismiss. Doc. 27 at 2. Plaintiffs do not

substantively respond to NGPG and NGHS's arguments in their response to

Defendants' Motion to Dismiss [23]. See generally id.[10]

First, the Court disagrees with NGPG and NGHS insofar as they argue that

the First Amended Complaint as a whole constitutes a shotgun pleading. Those

Defendants argue that the Complaint is "pled in a shotgun style and [does] not set

forth facts sufficient and specific facts as to each Defendant to establish a claim

upon which relief can be granted under federal law." Doc. 31 at 2; see also Doc. 30

at 4 (incorporating its Reply Brief [31] arguments regarding shotgun pleadings).

Generally speaking, a complaint is a shotgun pleading when it presents

claims in a manner in which a defendant cannot "discern what [the plaintiff] is

claiming and frame a responsive pleading." T.D.S. Inc. v. Shelby Mut. Ins. Co.,

760 F.2d 1520, 1533 n.14 (11th Cir. 1985). The Eleventh Circuit has identified

four "types or categories" of shotgun pleadings: (1) one in which each count adopts

the allegations of all preceding counts; (2) one which is conclusory, vague, and

contains immaterial facts "not obviously connected to any particular cause of

action;" (3) one that does not separate into a different count each cause of action or

claim of relief; and (4) a complaint which commits "the relatively rare sin" of

---

[10] A failure to substantively respond to the Defendants' motion does not, by itself, warrant a grant of those motions. See, e.g., Jackman v. Hasty, No. 1:10-CV-2485-RWS, 2012 WL 1426769, at *2 (N.D. Ga. Apr. 24, 2012) ("An unopposed motion, however, does not mean that the moving party automatically prevails; rather, the Court is still required to consider the merits of the motion.").

asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015).

The Court understands the Defendants to primarily be arguing that the Amended Complaint falls into category four. See, e.g., Doc. 31 at 2 ("Plaintiffs' claims are pled in a shotgun style and do not set forth facts sufficient and specific facts as to each Defendant); see also id. at 4 ("She also continues to plead her Complaint as a shotgun style pleading without specific allegations as to how her claims are separately brough[t] against each of the two Northeast Georgia Defendants.").

The First Amended Complaint, while admittedly discussing NGPG and NGHS in the same sentences and paragraphs, alleges in a straightforward manner that NGPG and NGHS both discriminated against Plaintiffs. See Doc. 21 ¶ 539. A typical complaint falling under the fourth category of shotgun pleadings identified by the Weiland court would contain various counts asserting claims against "the defendants" generally or all named defendants in an action. See Weiland, 792 F.3d at 1323 n.14 (citing Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) for the precedent behind the fourth category of shotgun pleadings); see also Magluta, 256 F.3d at 1284 (noting that the complaint there was "replete with allegations that

'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged."). The Amended Complaint here is different from the complaint in Magluta. Whereas the complaint in Magluta named fourteen defendants and charged all defendants in every count, the Amended Complaint here merely asserts discrimination and retaliation claims against NGPG and NGHS. See Doc. 21 ¶¶ 539–47. Especially when considering the underlying principle that "[c]omprehension, not perfection, is the standard of the pleading rules," the Court here finds Plaintiffs' Amended Complaint "sufficiently comprehensible so as not to be a shotgun pleading." Brown v. Dunn, 760 F. Supp. 3d 1326, 1344 (M.D. Ala. 2024).

### i.  **Discrimination**

NGPG and NGHS next argue that Plaintiff Manekar cannot state a claim for discrimination because "she admits that she voluntarily resigned from her employment with NGPG, and she has still failed to plead any factual allegations to support a claim that she was subjected to any other type of adverse action." Doc. 23 at 7. Plaintiffs appear to respond by arguing that various other allegations in connection with Manekar suffice for purposes of an adverse employment action. See Doc. 27 at 9–10.

Title VII precludes employers from discriminating against an employee "because of" his race. 42 U.S.C. § 2000e-2(a). "To state a claim for race

18

discrimination in violation of Title VII, a complaint need only provide sufficient factual allegations to 'plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination.' " Shed v. Univ. of S. Fla. Bd. of Trs., No. 23-13746, 2025 WL 1540573, at *5 (11th Cir. May 30, 2025) (citing Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015)). "To sufficiently allege a Title VII discrimination claim, an employee 'must show some harm respecting an identifiable term or condition of employment.' " Shed, 2025 WL 1540573, at *5 (quoting Muldrow v. City of St. Louis, 601 U.S. 346, 354–55 (2024)). "The adverse employment action 'must have left [him] worse off, but need not have left [him] significantly so.' Under 'the proper Title VII standard,' a plaintiff need not demonstrate that the adverse employment action "caused 'significant' harm.' " Shed, 2025 WL 1540573, at *5 (quoting Muldrow, 601 U.S. at 354–55, 360).

The Court finds Plaintiff Manekar has sufficiently alleged an adverse employment action here. Following the Supreme Court's decision in Muldrow, the standard for alleging an adverse employment action in the Title VII (and § 1981) discrimination context is not high. See Jimenez v. U.S. Att'y Gen., 146 F.4th 972, 995 n.7 (11th Cir. 2025) (noting that Muldrow "held that the change in an employee's working conditions need not be 'significant' or 'serious,' so long as

[the employee] shows 'some harm respecting an identifiable term or condition of employment.' " (quoting <u>Muldrow</u>, 601 U.S. at 353–55)).

Here, Manekar alleges that NGPG and NGHS did not provide her with assistants she needed, that Manekar suffered financially as a result of managing secretarial work herself, that NGPG and NGHS did not market Manekar, that Manekar was not selected for a promotion, that other NGPG physicians spread negative rumors about Manekar to her patients, and that NGPG "constructively discharged" Manekar. <u>See</u> Doc. 33-1 ¶¶ 382–83, 388–89, 396, 403–06, 409, 466–67. Together, these allegations support the inference that Manekar was left "worse off" than she would have been if not for these actions. <u>Muldrow</u>, 601 U.S. at 359. Defendants' arguments in support of dismissing Manekar's discrimination claim fall short. And with respect to a disparate impact claim as to Manekar, NGPG and NGHS fail to make any argument. <u>See generally</u> Docs. 23, 31.

Next, NGPG and NGHS argue that Plaintiff Patel's § 1981 discrimination claim fails because "she was provided with legitimate, non-discriminatory reasons for her termination," and because she fails to "provide any factual support or allegations that could tie her termination to her race, aside from [her] own subjective belief that race somehow played a role in her termination." Doc. 23 at 7–8.

For one, at this stage, whether NGPG and NGHS had legitimate, non-discriminatory reasons for Patel's termination is not an automatic bar to a discrimination claim as Defendants seem to suggest. See Doc. 23 at 8 (arguing that Patel cannot state a claim because she has pled NGPG and NGHS offered a legitimate non-discriminatory reason). First, as the Eleventh Circuit has just emphasized, McDonnell Douglas "has no application on a motion to dismiss" as it is "an evidentiary standard, not a pleading requirement." Ismael v. Roundtree, 161 F.4th 752, 760 (11th Cir. 2025). The question instead is whether a plaintiff "plausibly suggest[s] that [he] suffered an adverse employment action due to intentional racial discrimination." Shed, 2025 WL 1540573, at *5 (internal quotations omitted) (quoting Surtain, 789 F.3d at 1246).

But even if this was summary judgment, an employer's legitimate, nondiscriminatory reason—even if unrebutted—will never preclude the court from conducting a convincing mosaic analysis. Ismael, 161 F.4th at 760–65 ("A plaintiff must be afforded the opportunity to confront her burden of proof head-on, if she so chooses. Our Court's convincing mosaic standard heeds this directive and preserves the plaintiff's opportunity at summary judgment to directly create an inference of discrimination or retaliation—'shorn of all [the] McDonnell Douglas prophylaxis.' " (quoting Tynes v. Fla. Dep't of Juv. Just., 88 F.4th 939, 953 (11th Cir. 2023))). Thus, whether or not the Amended Complaint alleges legitimate

nondiscriminatory reasons for Patel's termination is not per se dispositive at the motion to dismiss stage (or any stage). <u>See</u> <u>Ismael</u>, 161 F.4th at 761 ("If we require the plaintiff to negate their counterparty's rationale, we permit the absurd result of a plaintiff losing on summary judgment for failing to demonstrate a falsity that she would not need to show at trial.").

NGPG and NGHS's second argument essentially goes to whether Plaintiff Patel has alleged causation. <u>See</u> Doc. 23 at 9 ("Although Patel alleges she was terminated, she has failed entirely to provide any factual support or allegations that could tie her termination to her race, aside from [her] own subjective belief that race somehow played a role in her termination."). As noted earlier, Plaintiffs appear to be asserting both disparate treatment and disparate impact claims under § 1981. <u>See</u> Doc. 21 ¶ 543 ("Defendants NGPG and NGHS's policies and practices have produces a disparate impact and treatment against Plaintiffs").

While claims brought under § 1981 must show that an "illicit motive was a 'but-for' cause for the adverse action," it is not required "to show that the unlawful purpose was the *only* contributing factor." <u>Ismael</u>, 161 F.4th at 761 (emphasis in original). Indeed, "so long as the plaintiff's [protected characteristic] was one but-for cause of [the adverse] decision, that is enough to trigger the law." <u>Bostock v. Clayton Cnty.</u>, 590 U.S. 644, 656 (2020). Thus, the ultimate question in such cases (as well as disparate impact cases) remains whether "a discriminatory reason more

likely motivated the employer." Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 256 (1981).

Patel alleges that Dr. Stanley, her direct supervisor, treated her differently from other non-Indian American mid-level employees. See Doc. 21 ¶¶ 432–38. Patel adds that NGHS asked Stanley to apologize to non-Indian American staff members when he was hostile or unprofessional towards them, but that he was never asked to apologize to Indian-American staff. Id. ¶ 479–81. At the time she was terminated, Patel was told by supervisors that "the providers collectively thought she was not a good fit for their practice." Id. ¶ 486. Patel later found out that several other providers within the practice had no part in the decision to terminate Patel, and that the decision had been entirely Stanley's. Id. ¶¶ 492, 507. Moreover, a white employee received no pushback from management for declining to assist with an assignment at a different location, whereas Patel had received pushback. Id. ¶¶ 501–04. When Patel was provided with a list of reasons as to why she was not a "good fit" with the practice, many of the items on that list either lacked context, were from a long time ago, or were mistakes not attributable to Patel. Id. ¶ 508.

In light of these allegations, the Court does not agree with Defendants that Patel "failed entirely to provide any factual support or allegations that could tie her termination to her race." Doc. 23 at 9. First, Patel alleges that she was treated

differently from non-Indian American employees—and provides concrete examples. See id. ¶¶ 432–38, 479–81, 501–04. In addition, Patel alleges that NGHS initially would not provide her with the list of reasons as to why she was not a good fit with the practice. Id. ¶ 486. Patel was only provided the list over a month later. Id. ¶ 506. These allegations show Plaintiff being treated differently from similarly situated employees on account of her race, as well as potentially offering pretextual reasons for her termination. See Stephens v. Dep't of Health and Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) (noting that on a motion to dismiss, the plaintiff's complaint "and all reasonable inferences therefrom are taken as true."). Taking the allegations together, Plaintiff has alleged that her race was a but-for cause of the adverse employment action.

Finally, NGPG and NGHS contend that Pareek's discrimination claim fails because he "fails to adequately outline which causes of action he has brought against which Defendants and based upon which alleged acts, instead simply lumping the Defendants together." Doc. 23 at 9. The undersigned disagrees. As noted earlier, it is apparent from the Amended Complaint that Pareek (along with the other Plaintiffs) is asserting the discrimination claim against both NGPG and NGHS. See, e.g., Doc. 21 ¶ 539 ("Plaintiffs allege that Defendants NGPG and NGHS discriminated and retaliated against them by treating them differently from and less preferably than similarly situated non-Indian American employees"). It is

unclear to the Court how the First Amended Complaint constitutes a shotgun pleading or fails to give adequate notice to NGPG and NGHS as to the claims asserted against them. Indeed, both Defendants address each claim squarely in their motion to dismiss. See generally Doc. 23.

NGPG and NGHS also argue that some of Pareek's factual allegations "reference events more than four years ago, which are time barred by even the longest statute of limitations under Section 1981." Doc. 23 at 10 (citing Barrett v. United Ins. Co. of Am., 418 F. Supp. 3d 1274, 1286 (S.D. Ga. 2019)). NGPG and NGHS are correct that a § 1981 discrimination claim, like the one here, has a four-year statute of limitations. See, e.g., Nicholson v. W.L. York, Inc., 145 S. Ct. 1528, 1529 (2025) (Jackson, J., dissenting from denial of cert.) (noting that a race discrimination claim under § 1981 has a four-year statute of limitations). Thus, events occurring before January 28, 2021 are barred. See Fed. R. Civ. P. 15(c)(1)(B) (allowing relation back when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading); see also Doc. 1 (filed on January 28, 2025).

But the pre-January 28, 2021 facts are primarily included to provide background and do not appear to be the true basis of the Plaintiffs' discrimination claims against NGPG and NGHS. Thus, while the Court agrees that any events

having occurred before January 28, 2021 are indeed barred, this alone does not require dismissal of Pareek's (or any other Plaintiff's) discrimination claim.

In sum, the Court finds NGPG and NGHS's arguments in connection with Plaintiffs' discrimination claims without merit. As a result, it is **RECOMMENDED** that NGPG and NGHS's Motion to Dismiss [23] Plaintiffs' § 1981 discrimination claims be **DENIED**.

### ii.   <u>Retaliation</u>[11]

NGPG and NGHS first argue that Manekar's retaliation claim fails because she fails to plead an adverse action and because she did not complain about racial discrimination during her employment with NGPG. <u>See</u> Doc. 23 at 7–8. Next, these Defendants argue that Patel's retaliation claim fails because she did not engage in any statutorily protected activity. <u>See id.</u> at 8–9. Finally, the Defendants contend that Pareek's retaliation claim fails because of its shotgun nature and because it lacks causation. <u>See id.</u> at 9–11.

"To state a claim of retaliation, a complaint must allege enough plausible facts to suggest that the plaintiff engaged in a statutorily protected activity, that she suffered a materially adverse action, and that a causal relationship existed between

---

[11] While Plaintiffs Patel and Manekar removed their retaliation claims from their Second and Third Amended Complaints, <u>see</u> Docs. 26-1, 33-1, since the Court has denied those motions to amend, the Court returns to Plaintiff's (still operative) First Amended Complaint—which does contain claims for retaliation by these Plaintiffs against NGPG and NGHS. <u>See</u> Doc. 21 ¶ 539.

those two events." Goolsby, 2025 WL 3013403, at *2 (citing Moore v. Grady Mem'l Hosp. Corp., 834 F.3d 1168, 1176 (11th Cir. 2016)). "Unlike Title VII claims where mixed-motivation causation sometimes applies, a retaliation claim under § 1981 requires proof that race was a but-for cause of the adverse action. In other words, to survive the motion to dismiss, Miller must plead facts supporting a reasonable inference that but for her race she would not have been disciplined." Miller v. Alli, No. 22-12729, 2023 WL 7923888, at *3 (11th Cir. Nov. 16, 2023) (citing Ossmann v. Meredith Corp., 82 F.4th 1007, 1014 (11th Cir. 2023)).

The Court agrees with NGPG and NGHS that Plaintiff Manekar fails to allege protected activity. See generally Doc. 21 ¶¶ 342–425. The closest any of Manekar's allegations come to protected activity appear at two different points of the Amended Complaint. First, she alleges that another physician "spread negative and false rumors" about her, and that she voiced her concerns to NGPG and NGHS "about this." Id. ¶¶ 372–73. Second, she alleges that she brought "to NGPG and NGHS's attention" what she felt was an unfair compensation structure. Id. ¶¶ 397–98. But to allege protected activity, a plaintiff must either (1) oppose an unlawful employment practice or (2) make a charge, testify, assist, or participate in an investigation, proceeding, or hearing. See, e.g., Smith v. City of Fort Pierce, 556 F. App'x 774, 777 (11th Cir. 2014).

27

Manekar alleges neither here. For one, she does not allege anywhere in her amended complaint that she made a charge or otherwise participated in an investigation. See generally Doc. 21 ¶¶ 342–425. Moreover, she does not allege that she opposed what she believed to be an unlawful employment practice. See id.; see also Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1311 (11th Cir. 2016) (noting that this way of engaging in protected activity "includes both a subjective and an objective component"). The two allegations noted above do not appear to deal with opposition to an unlawful employment practice. Rather, they seem to simply outline Manekar voicing concerns about (1) the conduct of a coworker and (2) her compensation structure.

Because Manekar fails to allege protected activity in support of her retaliation claim, it is **RECOMMENDED** that NGPG and NGHS's motion to dismiss Manekar's § 1981 retaliation claim be **GRANTED**.

The Court turns next to Plaintiff Patel. NGPG and NGHS argue similarly here that Patel fails to allege protected activity. See Doc. 23 at 8–9. The Court agrees. See generally Doc. 21 ¶¶ 426–538. The most that can be gleaned from the amended complaint in the way of protected activity is that Patel told Brandy Wagoner and Dana Schroeder, an administrative director, about an incident she

had with Dr. Stanley. <u>See</u> <u>id.</u> ¶¶ 58, 477.[12] But again, engaging in protected activity

means either opposing an unlawful employment practice or participating in some

way in an investigation, proceeding, or hearing. <u>See</u> <u>Smith</u>, 556 F. App'x at 777.

Patel's only allegation even close to satisfying this standard is that she complained

to Wagoner and Schroeder about Stanley's treatment of her. But there is no

suggestion that Patel was complaining specifically about any sort of race-based

discrimination or another form of unlawful practice in connection with Stanley.

Because Patel fails to allege protected activity in support of her retaliation

claim, it is **RECOMMENDED** that NGPG and NGHS's motion to dismiss Patel's

§ 1981 retaliation claim be **GRANTED**.

The Court turns finally to Plaintiff Pareek's retaliation claim. NGPG and

NGHS argue that Pareek "fails to adequately outline which causes of action he has

brought against which Defendants and based upon which alleged acts," and that his

retaliation claim fails as a result. Doc. 23 at 9. These Defendants add that Pareek

"does not allege how or why [either NGPG or NGHS] could or should be

responsible for" Georgia Urology's failure to hire him. <u>Id.</u> at 10. Defendants also

argue that several of Pareek's factual allegations are time-barred. <u>See</u> <u>id.</u> at 10–11.

Finally, NGPG and NGHS contend that Pareek "has not even alleged that

---

[12] The First Amended Complaint does not specify Wagoner's role within NGPG or
NGHS. <u>See generally</u> Doc. 21.

[Pareek's concern regarding discrimination] was communicated directly to Georgia Urology, let alone that the Northeast Georgia Defendants somehow caused him to not be hired." Id. at 10.

First, the Court disagrees that Pareek's retaliation claim constitutes a shotgun pleading. As noted earlier, to state of claim for retaliation, a plaintiff must plausibly plead that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. See, e.g., Miller, 2023 WL 7923888, at *3. Here, Plaintiffs allege that Pareek made complaints to NGHS CEO Carol Burrell and that Burrell and others involved in the practice transition from NGHS to Georgia Urology had knowledge of Pareek's opposition to race discrimination. See Doc. 21 ¶¶ 315–16, 322, 340. To the Court, the thrust of these allegations is rather straight-forward: Pareek claims that NGPG and NGHS retaliated against him for engaging in protected activity by not facilitating Pareek's hire by Georgia Urology. In sum, the Court finds that NGPG and NGHS are sufficiently on notice as to Pareek's retaliation claim.

This leaves Defendants' argument that those allegations do not state a claim for retaliation as Pareek has not alleged causation. See Doc. 23 at 10. In particular, Defendants contend that Pareek has failed to allege NGPG and NGHS ever made Georgia Urology aware of Pareek's protected expression. Id. In addition,

Defendants argue that Pareek fails to allege that NGPG and NGHS "somehow caused [Pareek] not to be hired." Id.

Causation in the § 1981 retaliation context is of the but-for variety. See, e.g., Miller, 2023 WL 7923888, at *3 ("In other words, to survive the motion to dismiss, [a plaintiff] must plead facts supporting a reasonable inference that but for her race she would not have been disciplined."); Ismael, 161 F.4th at 761 (noting that for a claim under § 1981, the plaintiff "must show that an illicit motive was *a 'but-for' cause* for the adverse action" (emphasis added)).

Here, Plaintiffs do not allege but-for causation with respect to Pareek's retaliation claim against NGPG and NGHS. Plaintiffs dedicate an entire section of the Amended Complaint to the relationship between Pareek, NGPG, NGHS, and Georgia Urology. See Doc. 21 ¶¶ 313–41. Among those allegations, Plaintiffs contend that NGHS CEO Carol Burrell and others involved in the practice transition knew of Pareek's protected activity, id. ¶¶ ¶¶ 315–22, that Georgia Urology refused to engage Pareek in employment discussions—but not stating who refused to engage with him or what that refusal consisted of, id. ¶ 337, and that Georgia Urology worked on the practice transition with multiple NGPG and NGHS employees who had knowledge that Pareek had engaged in protected activity—but without alleging that those NGPG and NGHS employees actually

31

told Georgia Urology employees anything about that protected activity or otherwise took steps to thwart his hiring. Id. ¶ 340.

None of these conclusory allegations actually connect Pareek's protected activity to Georgia Urology's failure to hire Pareek. As Defendants point out, nothing in the Amended Complaint alleges that information regarding Pareek's protected activity was ever communicated to Georgia Urology—either by the employees involved in the practice transition or anyone else. See generally id. While Plaintiffs allege that employees involved in the transition knew about Pareek's protected expression, this is still one step away from alleging what would seemingly be necessary for purposes of pleading causation under this fact pattern—either that Georgia Urology somehow became aware of the protected expression as a result of NGPG and NGHS representatives informing them, or that those representatives somehow otherwise caused Georgia Urology not to hire Pareek as retaliation. The Court does not read the Amended Complaint to make any such allegations, especially in light of the fact that Pareek never applied for a position at Georgia Urology.

Because Pareek's retaliation claim fails to sufficiently plead causation, it is **RECOMMENDED** that NGPG and NGHS's motion to dismiss Pareek's retaliation claim be **GRANTED**.

## Conclusion

In sum, Plaintiffs' Second Motion to Amend [26] is denied as moot and the Third Motion to Amend [33] is denied. Moreover, the Court recommends granting Georgia Urology's Motion to Dismiss [24] while granting in part and denying in part NGPG and NGHS's Motion to Dismiss [23], as explained above.

It is recommended that the only claims that remain are the § 1981 discrimination claims made by Manekar, Patel, and Pareek against NGPG and NGHS.

## Summary

Plaintiffs' Second Motion to Amend [26] is **DENIED AS MOOT**.

Plaintiffs' Third Motion to Amend [33] is **DENIED**.

It is **RECOMMENDED** that Georgia Urology's Motion to Dismiss [24] be **GRANTED**.

It is **RECOMMENDED** that NGPG and NGHS's Motion to Dismiss [23] be **GRANTED** as to the Plaintiffs' retaliation claims.

It is **RECOMMENDED** that NGPG and NGHS's Motion to Dismiss [23] be **DENIED** as to the Plaintiffs' discrimination claims.

**IT IS SO ORDERED AND REPORTED AND RECOMMENDED** this

<u>22nd</u> day of <u>January</u>, 2026.

_____
Anna W. Howard
United States Magistrate Judge